UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD LYNCH,<br><br>                            Plaintiff,<br><br>-against-<br><br>MTX GROUP, INC. and<br>DASTAGIR NOBEL,<br><br>                          Defendants. | **COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>Civil Case No.: 1:19-cv-1424 (TJM/CFH) |

Richard Lynch ("Lynch") brings this complaint against MTX Group, Inc. ("MTX") and its principal, Dastagir Nobel ("Nobel"), for MTX's non-payment of wages and commission and for retaliation, and alleges the following:

### Parties

1. Plaintiff Richard Lynch in an individual residing in Framingham, Middlesex County, Massachusetts.

2. Defendant MTX is, upon information and belief, a New York corporation with its principal place of business located in Albany, New York.

3. Dastagir Nobel is, on information and belief, the chairman and CEO of MTX and resides in Bethlehem, New York. At all relevant times, Nobel had direct control over MTX's operations and in fact made decisions on behalf of MTX directly regarding the non-payment of commissions to Lynch.

### Factual Allegations

4. Lynch has been working in the information technology sales field for more than 30 years, particularly selling to the Commonwealth of Massachusetts and state and local government agencies in New England.

5. MTX is engaged in the business of providing information technology services.

6. In early 2019, MTX offered Lynch the position of Regional Sales Director.

7. While MTX was based in New York, Lynch lived and worked in Massachusetts.

8. Lynch was hired by MTX to sell its technology products and services primarily to state agencies in Massachusetts and Maine, where Lynch had years of experience and extensive business contacts.

*The Employment Agreement*

9. On or about February 12, 2019, Lynch and MTX entered into an employment agreement ("the Employment Agreement"), attached hereto as Exhibit A.

10. Pursuant to the Employment Agreement, Lynch was entitled to a base salary of $70,000 and was eligible to earn commissions of 3% or 5.5% on sales pursuant to the Employment Agreement. See Exhibit A.

11. Employment Agreement Addendum C ("Addendum C") sets forth the specific terms of Lynch's commission.

12. Addendum C provides that, with regard to "Non-RFP" sales, "[f]or the duration of [Lynch's] first year, the Company shall pay a 5.5% percent commission on any sales made by [Lynch] on behalf of the Company." See Exhibit A.

13. Addendum C further provides that "[f]or any RFPs won and closed, [Lynch] will receive compensation" in the amount of 3% if Lynch "source[d], own[ed] and [led] the response" and in the amount of 1.5% if Lynch "source[d] and own[ed] only." See Exhibit A.

*Lynch's Sales on Behalf of MTX*

14. Immediately following execution of the Employment Agreement, Lynch began working on behalf of MTX.

15. Lynch used his extensive network of contacts and experience to secure sales, primarily in Massachusetts and Maine.

16. Lynch paid for business and travel expenses, which are reimbursable by MTX.

17. During the first half of 2019, the following sales were closed in Lynch's territory as a result of his work:

   a. Massachusetts Executive Office of Education in the amount of $2,700,000;

   b. Massachusetts Executive Office of Education in the amount of $112,500;

   c. Massachusetts Executive Office of Technology Services and Security in the amount of $476,250;

   d. Massachusetts Executive Office of Technology Services and Security in the amount of $110,000;

   e. Maine Housing in the amount of $42,060; and

   f. Maine Department of Economic and Community Development in the amount of $25,000.

18. Lynch caused MTX to obtain a total of $3,575,810 in sales in his first five months with MTX, putting him well above the $2,000,000 first year quota goal set forth in the Employment Agreement.

19. Each of the Massachusetts sales and the Maine Department of Economic and Community Development sale were "non-RFP" sales under the Employment Agreement and entitled Lynch to a commission of 5.5% of $3,423,750 in sales, totaling $188,306.25.

20. The Maine Housing sale was an "RFP" and entitled Lynch to a commission of 3% of $42,060, totaling $1,261.80.

*MTX's Termination of Lynch and Its Failure to Pay His Compensation*

21.     In June 2019, Lynch was informed that MTX would not be paying commission on his sales.

22.     On June 21, 2019, Lynch sent an email to MTX management stating he was entitled to commission on more than $3.4 million in sales.

23.     Lynch attached to that email the compensation plan from the Employment Agreement.

24.     Just days later, in early July 2019, MTX terminated Lynch's employment without any explanation or reason.

25.     Prior to that time, Lynch had received no complaints or criticisms about his work at MTX.

## COUNT I
## Non-Payment of Wages in Violation of New York Labor Law §191-C

26.     Section 191-c(1) of New York's Labor Law provides that "[w]hen a contract between a principal and a sales representative is terminated, all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated."

27.     MTX owes Lynch at least $189,568.05 in commissions.

28.     Section 191-c(3) of New York's Labor Law provides that "[a] principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages [and the] prevailing party in any such action shall be entitled to an award of reasonable attorney's fees, court costs, and disbursements."

29. MTX and Nobel violated Section 191-c(1) by failing to pay Lynch his earned commission within five days of the terminations of his employment.

30. Pursuant to Section 191-c(3), MTX and Nobel are liable to Lynch for double damages, attorney's fees and costs.

## COUNT II
### Non-Payment of Wages in Violation of Mass. Gen. L. c. 149

31. Lynch repeats all of the foregoing allegations as if fully set forth herein.

32. The parties had a valid employment contract which required MTX to pay Lynch a base salary of $70,000 as well as commission on sales.

33. To date, MTX has failed to pay Lynch any commission, despite his closing more than $3.4 million in accounts.

34. MTX owes Lynch at least $189,568.05 in commissions.

35. Lynch has obtained a "Private Right to Sue" from the Massachusetts Attorney General.

36. The Massachusetts Wage Act, M.G.L. c. 149, §148, requires employers to pay terminated employees within six days of the termination of the pay period.

37. Section 148 further provides that it shall apply to the payment of commissions.

38. As a result of its failure to pay the commissions earned by Lynch within the required time, MTX has violated the M.G.L. c. 149, §148.

39. Pursuant to the Wage Act, MTX and Nobel are liable for three times the commission and attorneys' fees.

## COUNT III
### Retaliation

40. Lynch repeats all of the foregoing allegations as if fully set forth herein.

41. Lynch's email to MTX management explaining that he was entitled to unpaid commission constitutes protected conduct.

42. MTX was aware of the email sent to its management.

43. Lynch suffered an adverse action when his employment was terminated by MTX just days later.

44. Lynch's termination by MTX was causally connected to his questioning the non-payment of his commission.

## COUNT IV
## Breach of Contract

45. Lynch repeats all of the foregoing allegations as if fully set forth herein.

46. The parties entered into a valid contractual relationship when they executed the Employment Agreement.

47. Lynch performed his obligations under the contract.

48. MTX breached the contractual relationship by failing to pay Lynch the commission to which he was entitled.

49. MTX's conduct caused Lynch damage.

## COUNT V
## Breach of Covenant of Good faith and Fair Dealing

50. Lynch repeats all of the foregoing allegations as if fully set forth herein.

51. The parties entered into a valid contractual relationship when they executed the Employment Agreement.

52. In every contract is implied a covenant of good faith and fair dealing.

53. Lynch performed his obligations under the contract.

54.     MTX refused to honor Lynch's sales, claiming that he was not entitled to commissions for reasons that were unjustified and made solely to deprive Lynch of the commissions due under the contract.

55.     MTX's conduct caused Lynch damage.

WHEREFORE, Lynch demands Judgment in his favor and an award of damages on all counts; an award of double or treble damages plus attorney's fees and costs; pre-judgment and post-judgment interest; and such other relief as the Court deems just and appropriate.

Respectfully submitted,

**GARDNER & ROSENBERG P.C.**

/s/Nicholas J. Rosenberg
Nicholas J. Rosenberg
Bar Roll No. 701440
One State Street, Fourth Floor
Boston, MA 02109
Tel: 617-390-7570
nick@gardnerrosenberg.com

*Attorneys for Plaintiff Richard Lynch*

Dated: November 18, 2019